## PINKERTON v. GIBSON.

(Court of Appeals of District of Columbia. Submitted November 17, 1924. Decided December 1, 1924.)

No. 1691.

1. **Patents ☞91(3)—Evidence held not to prove disclosure of invention by junior to senior party.**

In interference proceeding involving right to patent carton for hairpins, evidence *held* insufficient to prove that invention was disclosed to senior party by junior party.

2. **Patents ☞91(1)—Junior party, in interference proceeding, had burden of proving that he, and not senior party, had made invention.**

In interference proceeding, junior party had burden of proving that he, and not senior party, had made the invention.

Appeal from Commissioner of Patents.

Interference proceeding between Edward E. Pinkerton and Clark A. Gibson. From decision awarding priority to the latter, the former appeals. Affirmed.

Joshua R. H. Potts and B. G. Richards, both of Chicago, Ill., for appellant.

C. L. Parker, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Patent Office, in an interference proceeding, awarding priority to the senior party Gibson.

Gibson was the secretary and general manager of the Sta-Rite Hairpin Company, of Shelbyville, Ill., and Pinkerton was president of the Pinkerton Folding Box Company, of Chicago. A former official of the Sta-Rite Company, in an interview with Pinkerton at the latter's factory, suggested to him the manufacture of cartons, instead of display cards, formerly in use. This official and Pinkerton went to the store of Marshall Field & Co. and inspected cartons used by other manufacturers and having plain straps with wooden pins glued between the center of the strap and the side of the box to hold the display hairpin. On September 2, 1920, and subsequent to this interview, Pinkerton sent the Sta-Rite Company a small carton and wrote the company as follows: "We have mailed you, under separate cover, a small hand-made carton for the celluloid pin, to be used instead of the card, as suggested by Mr. Bland. Advise us as to how many of these cartons you wish, so we can make provisions to get some of them out for you. We will endeavor to

use the stock that we purchased for the cards for this purpose."

[1] It is the contention of Pinkerton that the carton referred to in this letter disclosed the invention in issue, which differs from the prior art, in that the strap which overlies the display pin is provided with a struck-down portion or tongue, which passes between the prongs of the pin and through an opening in the side of the box, thereby eliminating the wooden dowel. It will be observed that no claim is made in this letter that the carton therein mentioned contained any novel features, nor is there any description of it. Right here it may be mentioned that Pinkerton had taken out 10 patents on other kinds of boxes, so that he must have appreciated the importance of describing and claiming any invention he was conscious of having made. Mr. Gibson, who opened the package containing the carton upon its receipt by the Sta-Rite Company, Miss Black, his stenographer, Mr. Girouard, foreman of the celluloid department, a Mr. Creech, a director of the company, and a Mr. Tallman, whose factory was near by, and who was a disinterested witness, all testified to the effect that the carton in question did not disclose the invention; that it did not differ from the cartons already in use. The Assistant Commissioner has very carefully and fairly reviewed this testimony, and we agree with him that it disproves Pinkerton's contention on this point.

Cogency is added to this view from Pinkerton's failure in the letter to describe the carton, from his failure to preserve it when returned personally by Mr. Gibson, and from the equivocal character of his testimony on cross-examination. Mr. Gibson, shortly after his company received this carton, went to Chicago and remained there several days, during which he frequently interviewed Mr. Pinkerton and other concerns dealing in wooden pins or dowels. Gibson contends that it was during this time that he made the invention. On cross-examination, Pinkerton was asked whether he did not suggest to Gibson that he get prices and quotations on wooden pins or dowels, and replied, "No; not that I remember of." He then was asked if Gibson had not reported to him that he had secured prices from one or two persons who owned the stock from which these wooden pins were made, and answered, "No; not in my memory." He again was asked whether Gibson did not come back to his (Pinkerton's) office after he had been in Chicago a couple of days, with a box which he informed Pinkerton he had cut out himself the night before, and responded, "I don't remember anything of the kind; we had got through with this box, as to my knowledge." Thereupon he was asked if Gibson did not submit this box for his examination, and whether, after carefully examining it, and taking it apart, and putting it together again, he did not say to Gibson, "You have got it." To this inquiry he replied, "No; I don't remember that."

That Gibson did obtain prices on these dowels is clearly established, because he gave the names and addresses of the firms, and it is apparent from Pinkerton's cross-examination that he not only knew of what Gibson had done, but probably suggested it. Of course, if Pinkerton had made the invention, as he now contends, there was no necessity for this course of conduct on the part of Gibson.

[2] The Assistant Commissioner has so carefully and satisfactorily reviewed the evidence that we do not consider it necessary to dwell further upon it. The burden was upon Pinkerton, as the junior party, and he has not sustained it. We therefore affirm the decision.

Affirmed.